(72 Misc. Rep. 577.)

### In re DE BOLET PERAZA'S WILL.

(Surrogate's Court, New York County. June, 1911.)

1. WILLS (§ 821*)—CONSTRUCTION—CHARGE ON PROPERTY DEVISED.

Where the first paragraph of a clause in a will gives to the son of testatrix the good will, stock, secret formulas, trade-marks, and trade-names of a business, and to a like extent, and subject to certain provisions hereinafter to be mentioned, gives him the secret formula of a certain compound, and subsequent paragraphs provide that he shall account and pay over to the other children of testatrix a certain share of the profits of the business, the proviso in the subsequent paragraphs, applies to all the property embraced in the first paragraph, and not simply to the secret formula last mentioned.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 821.*]

2. WILLS (§ 821*)—CONSTRUCTION—CREATION OF TRUSTS.

A will giving to the son of testatrix the good will, stock, secret formulas, trade-marks, and trade-names of a business, and the secret formula of a certain compound, provided he shall account and pay over to her other children a certain share of the profits of the business, being void if construed as an attempt to create a trust, will be held to import a covenant on the part of the legatee, upon his acceptance of the legacy, to account for and pay over the income as specified.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 821.*]

3. PERPETUITIES (§ 6*)—FUTURE ESTATES—SUSPENSION OF POWER OF ALIENATION.

Where a will gives to the son of testatrix a certain business, with the proviso that he shall account and pay over to the other children a certain share of the profits, the implied covenant on the part of the legatee to pay over the income arising upon his acceptance of the legacy is not within the statute of perpetuities, as all the interests are immediately alienable.

[Ed. Note.—For other cases, see Perpetuities, Dec. Dig. § 6.*]

In the matter of proving the last will and testament of Perfecto De Bolet Peraza. Decree rendered.

James T. Brady, special guardian, for infant legatees.
Guernsey Price, for Nicanor Bolet.
H. C. S. Stimpson, for contestant Julio C. Bolet.
Douglas Levine, for contestant Carlos C. Bolet.
Robert H. Patton, for contestant Pilar C. Bolet.

FOWLER, S. The factum of this will was sufficiently proved upon the trial and is established. It remains now to determine the issues raised by the answers as to the validity, construction, and effect of clause second, which relates wholly to personal property. Such clause reads as follows:

"Second. I give and bequeath to my son, Nicanor Bolet, all my right, title and interest, whatsoever, in and to the business now conducted by him for me, and known variously as 'Pildoras Tocologicas Del Doctor N. Bolet' and as 'Doctor N. Bolet,' and as 'Doctor Nicanor Bolet's Tocological Pills,' etc., together with the good will, stock in trade, all appurtenances, secret formulas, trade-marks, trade-names, and everything whatsoever now, that may hereafter be used in connection with, or may be necessary to the said manufacturing

and selling business, as well as all money due me in connection therewith; and to a like extent and subject to certain provisions hereinafter mentioned. I give and bequeath to my said son, Nicanor Bolet, the secret formula and all rights thereunder of the compound known as 'Elixir Vegetal':

"Provided, however, that the said Nicanor Bolet or his legal representatives shall, on the first days of January and July of each year, or within ten days thereafter, or at such other times as the parties may mutually agree, render to each of my remaining children, Julio Cesar Bolet, Carlos C. Bolet and Pilar Bolet de Ponce de Leon (by the ordinary method of mailing to their last known address) a true and accurate written statement showing the condition of the said business, and paying to each of them an undivided one-fifth (⅕) part or share of the net profits of the said business as shown by such written statement; or in the event of the death of any one of my said children thus named, then by rendering such statement and paying such sum or proportionate share of the net profits to his widow (if a son should so decease) during her life and as long as she shall remain unmarried, or in the event of her death or remarriage, or the death of my daughter, then by rendering such statement and paying such sum or proportionate share of the net profits to the surviving child or children of the said deceased son or daughter, share and share alike; and

"Provided, further, that in the event of the death or remarriage of a son's widow, and no child is left to inherit, then the share mentioned shall revert to my estate and be equally divided between all of my surviving children and grandchildren, the latter taking per stirpes and not per capita."

The testatrix died in September, 1909. All of the children named by her in the above-quoted clause of her will survived her, and they constitute her next of kin. They are all married. Nicanor, the eldest son, has two children, aged respectively 15 and 19 years, and the testatrix's daughter, Pilar, has a daughter aged 20 years. Julio and Carlos are without children.

[1] At the outset it is necessary to determine how much of the property embraced in the first paragraph of clause second is subject to the provisions contained in the second and third paragraphs, for it is contended by Nicanor that only the property called "Elixir Vegetal" is subject thereto, and it is true that, when the first paragraph is read by itself, that contention seems tenable. It will be seen, however, to be wholly untenable when read in connection with the next succeeding paragraph of the same clause, and with clause third of the will. As I shall have occasion to refer to clause third hereafter upon another branch of the cause, I quote it as follows:

"Third. In the event that I shall survive my son, Nicanor Bolet, then I give, devise and bequeath to his son, my grandson, Nicanor Bolet y Rice, all my right, title and interest, whatsoever, in and to the business above referred to, and as fully set out in detail in the second paragraph herein, and with the same limitations and provisions, and with the further provision that he account and pay over to his mother, during her life or as long as she shall remain unmarried, and to his sister, during her life, in the same manner and at the times heretofore fixed in regard to the other legatees, an undivided one-third (⅓) each of any profits he may derive from the said business; and in the event of the death or remarriage of his said mother, then, by accounting and paying over to his sister, Alicia Bolet y Rice, during her life, an undivided one-fifth (⅕) share of the entire profits of the said business."

My conclusion is that all the property embraced in the first paragraph of clause second is subject to the provisions of the second and third paragraphs of that clause.

[2] The vital question in the cause is whether or not the testatrix attempted to create a trust or trusts in the property and to appoint her son Nicanor the trustee thereof. The adult contestants maintain that she intended to create one trust involving the whole of the property embraced in the first paragraph of clause second, and that such trust suspends the absolute ownership of the property for more than two lives in being, and is therefore void. In behalf of the infant legatees it is contended that the intention of the testatrix was to create three separate and independent trusts, and that such trusts are valid. The proponent of the will, Nicanor Bolet, contends that the property is given to him outright, subject to certain charges which do not offend against the statute of perpetuities.

It is obvious that a single trust to pay income during the lives of all the children of the testatrix named by her and of their children would be void for the reason stated by the adult contestants. For the same reason each of the three separate and independent trusts favored by the special guardian would be void. It is only by assuming that the children of the testatrix will have no more offspring, and that the testatrix meant by a son's "widow" the present wife of each son, that the apparent validity of the three trusts is worked out.

Bearing in mind the general rule that an illegal intendment will not be presumed where a double construction of a testator's language is possible (Phelps v. Pond, 23 N. Y. 69; Roe v. Vingut, 117 N. Y. 204, 218, 22 N. E. 933; Smith v. Edwards, 88 N. Y. 92, 102), let us proceed to examine the principal features of the will. In the first paragraph of clause second the testatrix gives to her son Nicanor all her right, title, and interest in the property therein described, subject to certain "provisions" which are to follow. These "provisions" are contained in the second and third paragraphs of the same clause. When examined they are found not to relate at all to the corpus of the property and to affect only three-fifths of the income. These three-fifths are to be paid by Nicanor, *or his representatives,* to other persons during their lives, but the will is silent as to the remaining two-fifths of the income. As to that part of the corpus producing the three-fifths of the income directed to be paid, the will is equally silent concerning what is to become of it on the termination of the period during which the payments of income are to be made. These very peculiar features of the will are not consistent with the theory that the testatrix intended her wishes to be carried into effect by means of a trust. Having given the corpus of the property to her son Nicanor at the outset, she adheres logically to all the consequences flowing from the act. Her silence in respect to the two-fifths of the income not directed to be paid out by Nicanor, and in respect to the ultimate destination of the corpus producing the remaining three-fifths, is consistent only with the theory that she regarded him as the owner of the property and recognized the principle that the incidents of ownership would follow the ownership; that the income not directed by her to be paid to others would be his, as the owner of the corpus, without any direction from her; and that the corpus, being always his, would remain so after the termination of the period

during which the payments of income were to be made. By making her directions as to the payments of income binding upon Nicanor's personal representative she further evinces the same logical consistency. In such a case the rule that a gift of the income of property is a gift of the property has no possible application. Locke v. Farmers' Loan & Trust Co., 140 N. Y. 145, 35 N. E. 578.

Clause third of the will, which would have come into effect, had the testatrix's son Nicanor died before her, is framed on precisely the same theory as clause second. In some respects it brings the testatrix's purposes out more clearly than does clause second. It shows beyond doubt, for instance, that the testatrix has reference solely to income when, in the third paragraph of clause second, she speaks of certain "shares" reverting to her estate under certain circumstances.

It is further to be remarked that, though the language of the will evinces upon the part of its draftsman an acquaintance with legal phraseology, neither the word "trust" nor the word "trustee," nor any word of similar import occurs in the will. This by itself would signify little, but taken in connection with the more striking peculiarities of the will, which I have already examined, it becomes a fact of some importance.

From all of the above considerations, I am convinced that the testatrix did not attempt or intend to create a trust or trusts.

What, then, was her intention? Language such as used by her in the paragraphs commencing with the word "provided" may create either a condition or a covenant, but even in a devise of real estate will be held to import a covenant, in the absence of any provision for re-entry or forfeiture, or of anything to support an inference that the testator intended the estate to depend upon the performance of the requirement. Cunningham v. Parker, 146 N. Y. 29, 40 N. E. 635, 48 Am. St. Rep. 765. In the case of a legacy, language implying some duty upon the part of the legatee will sometimes be held to constitute a covenant, and particularly in cases where the duty to be performed would be invalid as a trust. Matter of Raab, 42 App. Div. 141, 54 N. Y. Supp. 1043. In the cause at bar I am satisfied that it was the intention of the testatrix to give her eldest son, Nicanor, if he survived her—and, if he did not, then to his son—the absolute ownership of the business mentioned in the will, subject to the obligation to pay to the other members of her family the proportion fixed by her of the net profits of such business, imposing such duty upon her legatee and his legal representatives by means of a stipulation in the nature of a covenant. Whether this was a wise and prudent disposition for her to make of her property the court is not called upon to consider. Though somewhat novel, there is no legal objection to it; certainly none that a surrogate may consider upon an application for probate. The testatrix was probably influenced in the making of it by some national custom or family tradition which gives more weight to considerations of family headship than is usual in this country. The peculiar provisions of the will already referred to indicate this, and the impression created by them is strengthened by a reading of clause sixth, in which it is provided by the testatrix

that, in case her son Nicanor predecease her, his son Nicanor shall
assume the sole executorship the moment he attains his majority.

[3] By accepting the legacy, the legatee and his legal represent-
atives will be bound to carry out the wishes of the testatrix as ex-
pressed in her will, and will be amenable to the courts as if bound by
a contract to that end. Covenants of this kind are not within the pur-
view of the statute against perpetuities (Chapl. Susp. § 139; Matter of
Hart, 61 App. Div. 587, 593, 70 N. Y. Supp. 933), as all the interests
are immediately alienable.

Clause second of the will is valid as above construed. Settle deci-
sion and decree in conformity herewith, and tax costs on notice. Costs
of proponent and special guardian will be allowed out of the estate.

Decreed accordingly.