## In re FOWLES' WILL.

(Surrogate's Court, New York County. April 11, 1916.)

1. WILLS ☞488—CONSTRUCTION—EXTRINSIC EVIDENCE—ADMISSIBILITY.

Where a will is plain and unequivocal, extrinsic evidence as to the situation or declarations of testator is inadmissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1024, 1025, 1033–1036; Dec. Dig. ☞488.]

2. DEATH ☞5—SURVIVORSHIP—PRESUMPTION.

Where two persons perished in a common disaster, there is no presumption that either survived the other, or that they died simultaneously.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 7; Dec. Dig. ☞5.]

3. WILLS ☞81—VALIDITY—DIRECTION AS TO CONSTRUCTION.

A clause in a will, directing the court to reverse established rules of presumption and construction, is invalid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. ☞81.]

4. WILLS ☞446—CONSTRUCTION FAVORING VALIDITY.

Where the language of a will admits of two constructions, one invalid and the other valid, the latter is to be preferred.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig. ☞446.]

5. WILLS ☞439—CONSTRUCTION—INTENT OF TESTATOR.

A will is a unilateral instrument, and must be construed in the sense intended by the testator, and not in the sense desired by beneficiaries.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ☞439.]

6. WILLS ☞556—CONSTRUCTION—SUBSTITUTION.

A clause in a will providing that, in the event that testator and his wife should die simultaneously, or under such circumstances as to render it impossible to determine who predeceased the other, it was testator's will that he should be deemed to have predeceased his wife, and that the will should be construed on that basis, will be construed, in order to avoid invalidity and to effectuate the testator's intention to exclude his heirs, not as a direction to the court to construe the will contrary to the rules of law, but as a substitution of the executors of the wife as beneficiaries in case the husband and wife perished in the same disaster.

[Ed. Note.—For other cases, see Wills, Dec. Dig. ☞556.]

7. WILLS ☞785—ELECTION—RIGHT TO EXERCISE.

Where a will gave testator's wife certain real property on condition that she elect to take it at a certain value, but she died before making the election, her executors cannot make the election, but the property must be disposed of as though the wife refused to make it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2007, 2035, 2036; Dec. Dig. ☞785.]

Proceeding to construe the will of Charles Frederick Fowles, deceased. Order that decree be entered in accordance with opinion.

James W. Prendergast, of New York City, for petitioner Scott.
Duer, Strong & Whitehead, of New York City (Selden Bacon, of

New York City, and Henry S. Bacon, of Rochester, of counsel), for respondent Smith.

R. N. Baylies, of Chicago, Ill., for respondents Browne and Baylies.

Charles H. Beckett, of New York City, for Columbia Trust Co.

Egerton L. Winthrop, Jr., of New York City, special guardian, for Kenneth Charles Smith.

A. Perry Osborn, of New York City, special guardian, for other infants.

FOWLER, S.   This proceeding is instituted, pursuant to chapter 18 of the Code of Civil Procedure now in force, for a construction of the will of Charles Frederick Fowles, deceased.   The facts stated in the petition, promoted and filed by Mr. Fowles' executor, are not controverted, and are, therefore, for present purposes, to be taken as true. The various answers of the parties respondent do not raise issues of fact, but content themselves with recitals of the legal positions or claims of the respective respondents.

On the hearing Mr. Prendergast, the counsel who drafted the will of Mr. Fowles, and also the simultaneous will of his wife, was called to the stand without objection, and without objection or exception was permitted to testify.   His testimony was, however, inconsequential, as it did not go beyond presumptions which the law itself draws from Mr. Fowles' will and coverture.   Whether, as an abstract question, the testimony of Mr. Prendergast is entitled to be taken into consideration by the surrogate in this proceeding I must hereafter consider, as the range of extrinsic evidence permissible in proceedings of this character is very limited, and illegal evidence, even if offered without objection or exception, cannot be considered by the surrogate in matters of construction.   The statute of wills, requiring wills to be in writing, permits no other evidence of their intention, purport, or effect, except in certain well-defined and special instances.   I am very much opposed to innovations on this established principle in courts of construction, and for this reason shall not pass the testimony over without giving it further consideration.

It appears that the testator died on the 7th of May, 1915, while a passenger on board the transatlantic steamer Lusitania, which was sunk on that day in the Atlantic Ocean off the coast of Ireland.   His wife, who accompanied him on the voyage, lost her life in the same disaster. No evidence whatever has been submitted to show that testator survived his wife or that she survived him.   The draftsman of Mr. Fowles' will testified that two days before the testator and his wife sailed on the Lusitania they called at his office and each of them made and executed a will.   The several wills are set out in extenso in the petition.   The testator, in the presence of his wife, gave instructions to the attorney as to the manner in which he wished to dispose of his property, and his wife gave similar instructions in the presence of the testator.   At the time the respective wills of the testator and his wife were being prepared, it appears that they discussed with their attorney the danger incident to sailing on the Lusitania, under the unusual international conditions existing at that time, and the risk which trans-

atlantic voyagers then incurred. As a result of that discussion the will then prepared and executed by the testator contained the following paragraph:

"Ninth. In the event that my said wife and myself should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other, I hereby declare it to be my will that it shall be deemed that I shall have predeceased my said wife and that this my will and any and all its provisions shall be construed on the assumption and basis that I shall have predeceased my said wife."

The legal effect of this paragraph, and the disposition to be made of the 45 per cent. of the residuary estate given to his wife in the eighth paragraph of the will are the main questions presented to the surrogate for determination. The estate is large and the questions raised are important.

[1] I shall consider in limine the legal effect of the testimony of the counsel drafting the several wills. It would seem neither to add to nor detract anything from the text of the will, but in a matter of this importance I cannot forbear to point out that extrinsic evidence is never admissible in our courts of construction, except (1) where there is a latent ambiguity, arising dehors the will, as to the person or subject meant to be described; or (2) to rebut a resulting trust (Mann v. Ex'rs of Mann, 1 Johns. Ch. 231, 234); (3) if a patent ambiguity may be obviated by extrinsic evidence, it is now admitted by the best authority to afford a third exception to the rule excluding such extrinsic evidence. The only patent ambiguity which may not be so explained is one incapable of resolution. Hawkins on Wills, 8; Phillips on Ev. p. 391 (Ed. 1852); Thayer's Prelim. Treatise Ev. 422, 473, 599, 601; Beale, Cardinal Rules, Interpretation, 580, 581; Colpoys v. Colpoys, Jacob, 451, 53 R. R. 42; note to Cockle, Lead. Cas. on Ev. 300; Matter of Phipps, 214 N. Y. at page 381, 108 N. E. 554. It is often said that the circumstances surrounding a testator at the time of execution of the will may always be given in evidence in cases of construction. But I apprehend that this is true only when there is an equivocation or uncertainty as to the meaning of the will, or as to the persons or property referred to therein. Smith v. Smith, 1 Edw. Ch. 189; Bunner v. Storm, 1 Sandf. Ch. 357; Matter of Raab, 79 Misc. Rep. 185, 139 N. Y. Supp. 869; Matter of Vosseler, 89 Misc. Rep. 674, 152 N. Y. Supp. 208.

In the will before me there is no equivocation; the words and meaning of Mr. Fowles' will perfectly coincide, and therefore extrinsic evidence was inadmissible. But the extrinsic evidence offered and taken in this matter was entirely harmless and quite unnecessary in my judgment, as every fact testified to would be presumed by the court from the will and coverture of Mr. Fowles without extrinsic evidence. Whether instructions to an attorney for drawing a will are ever competent to explain the text of a will I doubt. Murray v. Jones, 2 V. & B. 318. Cf. Webber v. Stanley, 16 C. B. (N. S.) 698. Indeed, whether Mr. Prendergast, the draftsman of the wills, should have been allowed in this state to testify to his instructions, is also open to doubt. I had occasion to consider this point in Matter of Francis, 73 Misc. Rep. 153, 154, 132 N. Y. Supp. 695. But the extrinsic evidence in this mat-

ter may be disregarded, without harm, by reason of the fact that it was inconsequential.

[2] Let me next refer for a moment to the general law governing successions from commorientes who perish in a common disaster. The principle of the common law, that in the absence of all proof of actual survivorship there is no presumption of survivorship among those who perish in a common disaster, and no presumption of simultaneous death was referred to at length by me in my decision in a proceeding in this court involving the deaths in a common disaster of the Laffargue family. Matter of Herrmann, 75 Misc. Rep. 599, 601, et seq., 136 N. Y. Supp. 944. My decision was affirmed by a divided court. Matter of Laffargue, 155 App. Div. 923, 140 N. Y. Supp. 743. The Laffargue Case, however, ultimately turned on slight proof of actual survivorship, reinforced by circumstantial proof. Singularly enough, long after the formal confirmation of my judgment, I happened to read a very old case, now part of our common law, in the absence of conflicting domestic authority. A. D. 1596, Broughton v. Randall, Cro. Eliz. 503. This old case, precisely in point, would have been conclusive of the Laffargue Case, but fortunately my decision conformed in every respect with the old decision stating the common law.

That the common law of England and this state, unlike the civil law, raises no presumption of survivorship, in the absence of all proof of the fact, is familiar to us all. Underwood v. Wing, 19 Beav. 459; Newell v. Nichols, 12 Hun, 604; Id., 75 N. Y. 78, 31 Am. Rep. 424; Wing v. Angrave, 8 Ho. L. Cas. 183. In some other states of the Union, while there is no presumption of survivorship, there is a presumption of simultaneous death where persons are shown to have perished in a common disaster and there is no proof forthcoming of survivorship or moment of death. Johnson v. Merithew, 80 Me. 111, 13 Atl. 132, 6 Am. St. Rep. 162; In re Willbor, 20 R. I. 126, 37 Atl. 634, 51 L. R. A. 863, 78 Am. St. Rep. 842. In those states having this modified rule the property is distributed as if the deaths were simultaneous. Johnson v. Merithew, supra, and In re Willbor, supra. At common law and in this state where there is no presumption of even simultaneous deaths, if the claimant cannot make out actual survivorship, the gift over fails, and the property in controversy either passes into the residuum or by intestacy (Elliot v. Smith, 22 Ch. Div. 236; In re Alston, [1892] P. 142; Wing v. Angrave, 8 Ho. L. Cas. 183; Newell v. Nichols, 75 N. Y. 78, 90, 31 Am. Rep. 424; St. John v. Andrews Institute, 191 N. Y. at page 272, 83 N. E. 981, 14 Ann. Cas. 708), unless there is a substitution over.

That the common law raises no presumptions whatever in cases of this character is, perhaps, not always an advantage in the administration of justice. In Matter of Laffargue I referred to the unjust criticism of the presumptions of survivorship entertained in the civil law, with proper reference to the texts of the Pandects, and I attempted to show that in some instances the civil law presumptions were entirely reasonable and logical. Had the common law presumed simultaneous death, it would not have been a violent presumption, and there would have been at least one established premise for our courts of construc-

tion to work on. As it is, there is none in this state. The common law of England and the common law of this state treat survivorship or time of death as absolutely insoluble in the absence of proof. The result is that the onus at common law is placed on those asserting either the survivorship or the simultaneous death of one of two persons who perish in a common disaster.

As a generality, the fact of death in a common disaster is susceptible of proof, but the relative time of the individual deaths of commorientes is not often susceptible of proof. Thus it is in this case: Whether Mrs. Fowles perished at the same moment as her husband, or before or after him, stands without proof, and under the circumstances the common law raises no presumption whatever. Whether there is a tendency to recede from this doctrine in this state I shall not presume to consider. But I observe in St. John v. Andrews Institute, 191 N. Y. page 272, 83 N. E. 985, 14 Ann. Cas. 708, the court said:

"In such case the question of actual survivorship is regarded as unascertainable, and descent and distribution take the same course as if the deaths had been simultaneous."

[3] The effect of the ninth clause of Mr. Fowles' will will now be considered. It will be regarded first as a direction to a court of construction to reverse an accepted rule of the common law and thus reverse a rule of construction based on that rule. What effect, if any, can this direction contained in the ninth clause of Mr. Fowles' will have, regarded only as a direction to the court? This point, while insisted on, is not much argued in the briefs, and then without citations of authority. In my judgment the direction in question can have no effect, regarded as a direction to a court of construction. Presumptions prescribed by the common law and rules of construction based thereon are fixed and immutable and cannot be thus directed to be altered by the court to meet particular cases. In the French law it is said, according to my own translation, that a testator may in his will impose no condition which wounds the law or good morals. Troplong, Donations et Testaments, vol. 1, § 272. It seems to me that this author expresses with the usual Gallic clearness the proper limitation on testamentary directions of all testators.

Our system of jurisprudence is not different on this point. Directions in wills in order to be upheld must contravene neither the law nor good morals. The effect of an unauthorized imposition on testamentary gifts I had occasion to review in Matter of Anonymous, 80 Misc. Rep. 10, 141 N. Y. Supp. 700, reported as Anonymous in order to save an obscure child from publicity, obloquy, and threatened expulsion from school. The unlawful direction in that case was, however, a condition subsequent and not a direction for construction; but, mutatis mutandis, I find myself unable to add more to the reasons there assigned for the invalidity of the unlawful direction contained in Mr. Fowles' will if it is to be construed as a testamentary mandate to the court to alter a legal presumption and a resulting rule of construction.

[4] But it seems to the surrogate that the ninth clause of Mr. Fowles' will is not to be taken as a direction by testator to a court of

construction to alter an established presumption or canon of construction. It is susceptible of another meaning. In the construction of wills an illegal intendment on the part of a testator will not be presumed if another construction is possible. Roe v. Vingut, 117 N. Y. 204, 218, 22 N. E. 933; Smith v. Edwards, 88 N. Y. 92, 102; Matter of De Bolet Peraza, 72 Misc. Rep. 577, 581, 132 N. Y. Supp. 264. Words which admit of a twofold construction—one valid, the other invalid—will always be given the sense which validates them. Pond v. Bergh, 10 Paige, 140; Butler v. Butler, 3 Barb. Ch. 302. It is hardly worth while to waste time in citing authorities for such an elementary rule of construction of all written instruments as "ut res magis valeat quam pereat."

[5] Nor is it necessary to do more than refer to that cardinal principle of construction (not peculiar to wills alone, but common to all other writings) that the intention of the makers is always to govern construction. But I must not forbear to notice that in the interpretation of wills a will is to be regarded as a unilateral instrument and not a bilateral juristic act. In the course of the development of our own system of jurisprudence—the common law—a devise, as contrasted with a testament, was at one time regarded as a conveyance. During the prevalence of this conception there was a tendency for a time to regard a will of lands as a bilateral juristic act, and the earlier canons of construction applicable to devises were somewhat influenced by this tendency. But that time has long passed, and a last will and testament in our laws is now regarded as a unilateral instrument for the purposes of interpretation. In interpretations of wills doubtful passages must be construed in the sense in which the testators desired them to be understood, and not in the sense which the takers or beneficiaries desire. This is a fundamental canon in all systems of law. The civil law is most express on this point (D. 28, 1, 1; D. 50, 17, fr. 96), and the common law of this state not less so. Mr. Fowles' will is to be construed only in the sense intended by him, and not in the sense it was understood by Mrs. Fowles. It would be highly fallacious to take into consideration the sense in which Mrs. Fowles understood her husband's will. I cannot help thinking that the vice of that position has been obviated by my disregard of the extrinsic evidence offered and taken without objection.

[6] It is to me obvious that Mr. Fowles' real intention by the ninth clause of his will was to prevent a lapse in the event of Mrs. Fowles' incapacity in any way to take under his will. In that event Mr. Fowles intended that there should be a substitution of some one else in her place. There is nothing contrary to any rule of law in this intention. Shifting uses and executory limitations, freely allowed at common law, were largely matters of substitution. Whenever there is in a will an intention to substitute another in the place of a legatee or devisee dying during the lifetime of a testator, or at the same time as testator, or immediately after testator, so as to be unable to take and hold, then that other named as substitute will take by substitution, if vesting is concurrent and there is no perpetuity. No rule of law is then violated by this principle, and it enables us to give effect

to the obvious intention of the testator. Substitution is the common remedy for lapse. In order to meet the difficulties of the common law in the instances of commorientes nearly allied by blood, affinity, or consanguinity, there seems to be a tendency in the United States to hold that a gift over, if principal legatees "die before testator," is substitutional. Young Women's Christian Home v. French, 187 U. S. 401, 23 Sup. Ct. 184, 47 L. Ed. 233; Matter of Piffard, 111 N. Y. 410, 413, 18 N. E. 718, 2 L. R. A. 193; St. John v. Andrews Institute, 191 N. Y. 254, 83 N. E. 981, 14 Ann. Cas. 708. In Matter of Mayo, 76 Misc. Rep. 416, 420, 136 N. Y. Supp. 1066, I gave effect to this principle, although in order to support the substituted gift over I was compelled to adjudge that under the statute of powers in this state the power of appointment donated by the principal will never vested. This last point I decided on our domestic law of powers. In the application of rules of property I rarely seek authorities or analogies out of our own jurisdiction. The Revised Statutes are now nearly a century old, and our domestic law of property is generally independent of the aid of analogies afforded in foreign states. But I am, however, happy to observe from the briefs submitted in this cause that my decision in the Mayo Case precisely accorded with the analogous decisions on powers taking effect under the old statute of uses. Sharpe v. McCall, 1 Irish Reports, Chan. & Land Com. 1903, p. 179; Jones v. Southall, 32 Beav. 31.

In testaments the wishes of testators are to be very liberally expounded in all courts of construction. "In testamentis plenius voluntates testantium interpretantur." Paulus, ff. 50, 12. This rule of the civil law was long since adopted by our courts, as may be seen in Emerton's admirable treatise entitled "De conjecturis ultimarum Voluntatum" (page 68, Oxford, 1884). Mr. Emerton reviews the civil-law principles generally taken over by courts of construction operating under the common-law system. Unfortunately for its popularity, Mr. Emerton's treatise is written in Latin. But it makes evident that a principle of construction which is 2,000 years old is still in viridi observantia. A principle so old is certainly entitled to every consideration in courts of this character. The rule of construction cited means that the lawful intention of the testator should be supported fully by every solid and reasonable conjecture.

It is self-evident that Mr. Fowles knew that his wife could take no personal benefits under his will if she perished before him, or at the same time or even immediately after him. Knowing all this, as he must have known it, his will provides in substance that in any of these events the provisions for his wife shall inure to the benefit of her successors. This can only mean that Mrs. Fowles' personal representatives were to have the benefit by substitution of the provisions of his will intended primarily for her. Inartificially perhaps, but to my mind clearly, he expressed his testamentary intention that his legacies to his wife should not lapse but pass by substitution to those who in law were the successors of her person. In effect Mr. Fowles said plainly enough that in the event of his wife's incapacity from any

cause those who represented her in law should be substituted in her place in so far as was consistent with the rest of his own will.

That the courts of this state are inclined to construe gifts for the benefit of a person if he die before testator, as substitutional, in order to defeat a lapse where that is the expressed intention of testator, is disclosed by Matter of Piffard, 111 N. Y. 410, 18 N. E. 718, 2 L. R. A. 193. In principle that case is decisive of this, although the facts differ. But it is not the similarity of the facts which causes a decision to be a precedent, but the relevancy of the principle laid down. According to the doctrine of stare decisis, which is a fundamental of the common-law system, the only thing in a decision binding as an authority is the right principle upon which the case was decided and not the application of such principle. Matter of Tod, No. 1, 85 Misc. Rep. 298, 303, 304, 147 N. Y. Supp. 161. This is so obvious to all persons familiar with the development of the common law that it needs no citation of authority. In Matter of Piffard the legatee Sarah predeceased the testator, and in that event her share was directed to be paid over to her executors. The gift over was sustained as substitutional in order to prevent a lapse. Every argument urged against the conclusion reached by the court is identical with those urged here.

Who was intended by Mr. Fowles to take by substitution in the event that his wife could not take is not ambiguous or doubtful. It is obviously those persons who in law continued her legal existence, viz., her executors. Who these are is a mere matter of identity, and it is determined by Mrs. Fowles' will, which is proper extrinsic evidence for that purpose. Her executors take by substitution, but they take as her executors for the uses and purposes prescribed by her will. They do not take individually. That this was Mr. Fowles' express intention I have no doubt, and I can detect no illegality in such intention to carry the primary donations to Mrs. Fowles over to her executors by substitution in the events which have actually occurred. This was the conclusion and principle established by Matter of Piffard. It is this principle which under the doctrine of stare decisis controls this case now before me.

That common-law courts are inclined to a large and liberal construction in order to carry out the expressed intentions of testators is evident from such famous cases as that of Masters v. Masters, 1 P. Wms. 421, where a legacy to a Mrs. Sawyer was held to be intended for a Mrs. Swapper, as testator knew no such person as Mrs. Sawyer. The court properly held in that case, "Id certum est quod certum reddi potest." The identification of legatees may be aided by extrinsic evidence.

The principle of exclusion applies in interpretation of wills. From the ninth clause of Mr. Fowles' will it is apparent that testator intended to exclude or segregate from his general estate the legacies given to the use of his wife. These he appropriated to her in all the events which occurred or could have occurred. In no event did he intend that these legacies should accrue by his will to his own next of kin. When this is certain beyond all peradventure, the court should not be astute to find reasons for benefiting directly those whom in no event testator

himself wished to be benefited. To benefit by construction those not intended by testator to be benefited is contrary to all systems of jurisprudence, except possibly our own. Both Lord Mansfield and the English civilian, Phillemore, are justified in criticising those rules of construction defeating testators' expressed intention. Phillemore in particular has no words too harsh for canons of construction which defeat a testator's expressed intention. If Mr. Fowles' expressed intention that the legacies to his wife should not lapse is so defeated, the criticism of our principles of interpretation will be justified.

[7] My conclusion is that the executors of Mrs. Fowles are entitled by substitution to the sum of $5,000, bequeathed by the testator to his wife in subdivision 8 of paragraph second of the will, to the bequest of personal property contained in paragraph fourth thereof, and to one-half of 45 per cent. of the residuary. The devise of testator's real estate at Cobham, county surrey, England, was made upon the condition that the devisee elect to take it at a valuation of £8,250. The right of election was given to her personally and is extinguished by her death; it cannot be exercised by her executors. Her failure or incapacity to exercise the election per se defeated the devise and the alternative disposition directed by the testator takes effect, namely, that the real estate be sold and the proceeds added to the residuary.

The manner in which the executors of Mrs. Fowles' estate should pay over this property cannot be determined by the court in this proceeding, as her will is not properly before the court for construction. The surrogate will not consider in this proceeding a construction of the will in its relation to the proceeding now pending to determine the transfer tax upon the estate of the testator as the state comptroller is not a party to this proceeding.

A decree may be entered on notice in accordance with this decision.