[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12643
_____

D.C. Docket Nos. 0:18-cv-60138-BB; 0:16-cr-60239-BB-4

NIGEL CHRISTOPHER PAUL MARTIN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 4, 2020)

Before ROSENBAUM and TJOFLAT, Circuit Judges, and PAULEY,* District
Judge.

PAULEY, District Judge:

_____

* Honorable William H. Pauley III, Senior United States District Judge for the Southern
District of New York, sitting by designation.

Nigel Christopher Paul Martin, a citizen of Jamaica, appeals from the district court's denial of his habeas petition. On appeal, Martin argues that the district court abused its discretion in denying his claim without holding an evidentiary hearing. Specifically, Martin claims that he would not have pled guilty to access device fraud and aggravated identity theft but for his counsel's erroneous advice concerning the deportation consequences of his plea. We affirm the ruling of the district court.

## I. FACTUAL BACKGROUND

In December 2016, a federal grand jury charged Martin with conspiracy to commit access device fraud, 18 U.S.C. § 1029(b)(2) ("Count One"), access device fraud, 18 U.S.C. § 1029(a)(2) ("Count Two"), and aggravated identity theft, 18 U.S.C. § 1028A(a)(1) ("Count Nine"). The superseding indictment alleged that Martin and his co-defendants were involved in a scheme to make unauthorized credit card purchases at retail stores using credit card accounts issued to other individuals.

Martin pled guilty to Counts Two and Nine pursuant to a plea agreement. As relevant here, that plea agreement included a provision explaining the potential immigration consequences of the plea. Martin acknowledged that "[r]emoval and other immigration consequences are the subject of a separate proceeding" and that "no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status." Martin also affirmed in the plea agreement that he wished to plead guilty "regardless

2

of any immigration consequences," including "automatic removal from the United States."

During his allocution, the district court asked Martin whether he fully discussed the charges with his attorney, whether he was satisfied with his attorney's representation of him, and whether he had read and understood the plea agreement. Martin answered each inquiry in the affirmative. Three times he confirmed that no one made any promises or assurances of any kind, other than what was set forth in the plea agreement. The district court then asked Martin about his understanding of the immigration consequences of his plea:

> THE COURT: Have you and [your attorney] discussed the immigration consequences of your guilty plea?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you understand, sir, that if you are not a citizen of the United States, in addition to the other possible penalties you are facing, a plea of guilty may subject you to deportation, exclusion, or voluntary departure and prevent you from obtaining United States citizenship?
>
> THE DEFENDANT: Yes, Your Honor.

At the time he executed the plea agreement and pled guilty, Martin also signed a factual proffer. That proffer summarized facts the government would have proven beyond a reasonable doubt had the case gone to trial. Specifically, on March 21, 2016, Martin made an unauthorized purchase of $782 from Home Depot using a Capital One credit card. On March 29, 2016, Martin completed an unauthorized

3

telephone payment transaction for $369.94 from Home Depot. And on April 18, 2016, Martin assisted co-defendants in loading fraudulently purchased items into a vehicle. The proffer also asserted that the fraud loss resulting from the overall scheme was in excess of $200,000. During his allocution, Martin confirmed that the proffer was correct.

The Pre-Sentence Investigation Report ("PSR") calculated Martin's total offense level for access device fraud to be 13. The 10-level enhancement for a loss of more than $150,000 but less than $250,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(F) was based on a finding that the aggregate loss attributable to all of the co-conspirators was "approximately $200,000" in a scheme running from November 2015 to August 2016.

Martin's counsel objected to the loss amount calculation and the 10-level enhancement. He argued that Martin was only responsible for approximately $1,000 because he did not plead guilty to the conspiracy charge.

At sentencing, the government contended that the PSR properly calculated the fraud loss amount at approximately $200,000 because Martin was jointly and severally liable as an aider and abettor. The district court agreed with the government, overruled Martin's objection, and determined that Martin's guideline range was 12 to 18 months' imprisonment on the access device fraud charge, followed by a mandatory consecutive term of 24 months' imprisonment on the

4

aggravated identity theft charge. Accordingly, Martin's exposure under the Sentencing Guidelines was 36 to 42 months' imprisonment.

The government moved for a downward departure under U.S.S.G. § 5K1.1 because of Martin's substantial assistance. The government also argued that Martin was "the least culpable" in the scheme. The district court granted a downward departure and sentenced Martin principally to 12 months' imprisonment on each count to be served concurrently. The district court deferred fixing the amount of restitution pending a "final determination of the victims' losses." Later, the district court issued an amended judgment of conviction, ordering restitution in the amount of $153,419.13 joint and several with Martin's co-defendants.

In January 2018, Martin moved to vacate his sentence under 28 U.S.C. § 2255. He alleged that his attorney provided ineffective assistance of counsel because he (1) failed to advise Martin that deportation was mandatory for an aggravated felony conviction, (2) advised him that the loss amount would be less than $10,000, and (3) assured him that his sentence would be less than one year of imprisonment. Martin now claims that he would not have pled guilty had he known that he would be subject to mandatory deportation.

The district court denied Martin's habeas petition without holding an evidentiary hearing. The district court found that Martin's claims of deficient performance were contradicted by his "statements under oath at the plea colloquy."

5

Further, the district court noted, "even assuming, without deciding," that erroneous representations were made to Martin, he could not establish prejudice. By signing the plea agreement and confirming his statements under oath during the allocution, Martin "understood that his guilty plea could subject him to immigration consequences, including removal, and that no one, including his attorney, could predict exactly the loss amount or the sentence to be imposed at the time of the plea."

We granted a certificate of appeal on the issue of whether the district court abused its discretion in denying—without an evidentiary hearing—Martin's claim that, but for his counsel's erroneous advice concerning the deportation consequences of his guilty plea, he would not have pled guilty.

## II. DISCUSSION

### A.    Ineffective Assistance of Counsel

We review legal conclusions *de novo* and factual findings for clear error in a § 2255 proceeding. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). A claim of ineffective assistance of counsel is a mixed question of law and fact reviewed *de novo*. *Id.* We can affirm on any basis supported by the record, regardless of whether the district court decided the case on that basis. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) his counsel's performance was deficient and (2) the deficient performance

prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  For deficient performance, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 688.  And for prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 694).  In the context of a guilty plea, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas."  *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citations and quotation marks omitted).

Here, the district court assumed, without deciding, that Martin's attorney's performance was deficient.  The district court then concluded that Martin could not demonstrate prejudice under the second prong of the *Strickland* test.  As discussed below, we decline to assume that counsel's performance was deficient.

In *Padilla*, the Supreme Court held that the Sixth Amendment right to effective assistance of counsel requires counsel to "inform her client whether his plea carries a risk of deportation."  *Padilla*, 559 U.S. at 374.  Immigration law is

complex, and "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. "But when the deportation consequence is truly clear," counsel has a "duty to give correct advice." *Id.*

The Immigration and Nationality Act provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes "an offense that– involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Martin argues that his counsel failed to advise him that deportation was mandatory for an aggravated felony conviction. He also claims that his counsel informed him that the loss amount would be less than $10,000, the threshold under § 1101(a)(43)(M)(i).[1] Therefore, Martin alleges that his counsel performed deficiently.

We disagree. In pleading to access device fraud and aggravated identity theft, Martin did not conclusively plead to an aggravated felony. In contrast to offenses like trafficking in a controlled substance, these convictions, on their face, do not make deportation "presumptively mandatory." *Padilla*, 559 U.S. at 369; *see also* 8

---

[1] Martin's claim that his counsel assured him that his term of imprisonment would be less than a year does not bear on the aggravated felony question and we need not address it.

U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law . . . relating to a controlled substance . . . is deportable."); *Hernandez v. United States*, 778 F.3d 1230, 1233 (11th Cir. 2015). This is not an instance in which "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" for Martin's conviction. *Padilla*, 559 U.S. at 368.

Because of the uncertainty, Martin's counsel was required to advise him only that his pending criminal charges may carry a risk of adverse immigration consequences. Determining what constitutes an aggravated felony can be a difficult task. *See id.* at 378 (Alito, J., concurring) ("Defense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.'"). This is normally an inquiry reserved for immigration proceedings. In *Nijhawan v. Holder*, the Supreme Court held that immigration courts must apply a "circumstance-specific approach" to determine if a fraud offense involves loss to victims in excess of the $10,000 threshold under § 1101(a)(43)(M)(i). 557 U.S. 29, 38-40 (2009). Such an approach requires immigration courts to "look to the facts and circumstances underlying an offender's conviction." *Id.* at 34. The Supreme Court also indicated that the fraud loss must be "tied to the specific counts covered by the conviction," meaning that it could not be based on dismissed counts or general conduct. *Id.* at 42 (quotation marks

omitted).  Accordingly, access device fraud and aggravated identity theft *may* be predicate offenses for aggravated felonies—but they *may not*, depending on the amount of fraud loss and the underlying factual circumstances.

Martin's plea agreement noted that "[r]emoval and other immigration consequences are the subject of a separate proceeding" and that "no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status."  At his allocution, Martin acknowledged that he understood the consequences of his plea and the facts set forth in the proffer.  Although the proffer noted that the fraud loss related to the overall conspiracy was "in excess of $200,000," Martin did not plead to the conspiracy charge in Count One.  Thus, the total fraud loss was not tethered to the conduct Martin took responsibility for at his plea.  Rather, the proffer indicated that Martin made unauthorized purchases totaling $1,151.94 in March 2016 and assisted his co-defendants in April 2016.

At sentencing, the district court considered relevant conduct[2] from jointly undertaken criminal activity and found Martin jointly and severally responsible for a loss in excess of $200,000.  The government asserted that the fraud loss stemmed

---

[2] Under the Sentencing Guidelines, relevant conduct includes "all acts and omissions committed [or] aided [and] abetted . . . by the defendant . . . that occurred during the commission of the offense of conviction . . . ," as well as, "in the case of a jointly undertaken criminal activity[,] . . . all acts and omissions of others that were– (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity . . . ."  U.S.S.G. § 1B1.3(a)(1)(A), (B).

from conduct between January and June 2016. This was considerably longer than the time frame Martin acknowledged at his plea. The essence of Martin's argument in this respect is that his plea was involuntary because had he known that the district court would consider other relevant conduct in calculating the fraud loss, thus, in his view, making it more likely his conviction would ultimately be found to be an aggravated felony, he would not have pled guilty. But the scope of our review is limited to the issue specified in the certificate of appeal—that is, whether the district court abused its discretion in denying Martin's claim that, but for his counsel's erroneous advice concerning the deportation consequences of his guilty plea, he would not have pled guilty. *Murray v. United States*, 145 F.3d 1249, 1250-51 (11th Cir. 1998).

We cannot say that Martin's counsel's conduct "falls below the wide range of competence demanded of lawyers in criminal cases." *Osley*, 751 F.3d at 1222. Martin's counsel did not have a crystal ball when Martin entered his plea. *See Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) ("In evaluating an attorney's conduct, a court must avoid 'the distorting effects of hindsight' and must 'evaluate the conduct from counsel's perspective at the time.'" (quoting *Strickland*, 466 U.S. at 689)). Martin's counsel could not have predicted the district court's fraud loss findings. He objected to the findings in the PSR and contested the loss amount at sentencing. Martin may also have had another opportunity "to contest the amount

11

of loss . . . at the deportation hearing itself." *Nijhawan*, 557 U.S. at 42.[3]  His counsel could not have predicted how the immigration court would treat that question.

Therefore, we find that Martin's counsel's performance was not deficient. And because we find that Martin has not shown deficient performance, we need not analyze the prejudice prong of the *Strickland* test.  *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").[4]  Consequently, Martin has failed to satisfy his claim for ineffective assistance of counsel.

## B.    Request for an Evidentiary Hearing

We review the district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014).  "A district court abuses its discretion if it applies an incorrect

---

[3] We also note that Martin could have timely appealed from the initial judgment of conviction or the amended judgment fixing the amount of restitution. *See United States v. Muzio*, 757 F.3d 1243, 1250 n.9 (11th Cir. 2014).  He did neither.  A direct appeal—while not guaranteed success—would have been a way to challenge the district court's restitution determination.

[4] Nevertheless, we agree with the district court that Martin has not shown prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  Martin's plea agreement and sworn statements at his allocution establish that he understood pleading guilty to the charged offenses carried a possibility of deportation.  And he affirmatively represented that he wished to plead guilty "regardless of any immigration consequences."  Thus, Martin had sufficient notice of the possibility of removal.  Moreover, the government's application for a downward departure under U.S.S.G. § 5K1.1 speaks to the efforts by Martin and his attorney to minimize Martin's sentencing exposure.  Without "contemporaneous evidence to substantiate" Martin's claims, we will not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 137 S. Ct. at 1967.

legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216-17 (11th Cir. 2009).  When a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).

"A petitioner is entitled to an evidentiary hearing if he 'alleges facts that, if true, would entitle him to relief.'"  *Winthrop-Redin*, 767 F.3d at 1216 (quoting *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002)).  However, an evidentiary hearing is not required "if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'"  *Id.* (quoting *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989)).

Here, Martin's allegations of ineffective assistance are contradicted by the record.  In his plea agreement, Martin confirmed that he wished to plead guilty "regardless of any immigration consequences," including "automatic removal from the United States."  At his plea, he affirmed that he fully discussed the charges with his attorney and was satisfied with his counsel's representation.  He also acknowledged signing the factual proffer and confirmed that no one, including his

13

attorney, could predict his final sentence.  These statements, under oath, are afforded great weight.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").  Thus, the district court did not abuse its discretion in denying Martin's request for an evidentiary hearing.

## III. CONCLUSION

We affirm the district court's dismissal of Martin's petition.

**AFFIRMED.**