[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10232
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OLGA ALMONTE,
a.k.a. Olga Bosch,
a.k.a. Judith Vargas,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 15, 2020)

Before GRANT, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Olga Almonte appeals the denial of her petition for a writ of error coram nobis,

which challenges her 2012 conviction for aggravated identity theft. Almonte argues

that her conviction should be vacated because (1) it involved an error of the most fundamental character and (2) sound reasons existed for her failure to challenge this error earlier by a direct appeal or collateral attack. Upon consideration, we conclude that Almonte's arguments lack merit. Accordingly, we AFFIRM.

## I. BACKGROUND

Almonte was born in the Dominican Republic and became a United States citizen in 2012. Around two months after becoming a citizen, she was arrested and charged with conspiracy to commit bank fraud, bank fraud, and aggravated identify theft. These charges stemmed from conduct occurring approximately between February 2008 and November 2009. Jason P. Grey represented Almonte in her criminal proceedings.

On August 2, 2012, Almonte was expected to plead guilty to one count of aggravated identity theft at a change of plea hearing. During the plea colloquy, the district court asked Almonte whether she understood that pleading guilty could subject her to deportation if she was an alien. Almonte responded affirmatively. The government interjected that Almonte was a naturalized citizen and that her plea agreement included a provision about potential denaturalization consequences. In response, the district court warned Almonte that "it is possible that they will attempt to denaturalize [her] as a citizen." After further interaction between Almonte and the district court, the government recited the factual proffer that she had signed. During

2

this recitation, Almonte repeatedly shook her head to apparently say "no." Due to her hesitant behavior, the district court refused to accept Almonte's plea at that time.

On August 24, 2012, Almonte returned for a second change of plea hearing with the same counsel and before the same judge. Earlier that day, she had signed a second factual proffer stipulating certain facts related to her charges and a second plea agreement. The plea agreement warned her that "denaturalization may . . . be a consequence of pleading guilty to a crime," "that no one, including the defendant's attorney or the court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status," and that she was affirming a guilty plea "even if the consequence is the defendant's denaturalization and automatic removal from the United States."

During the plea colloquy, the district court asked Almonte whether she understood that pleading guilty could subject her to deportation if she were an alien. Almonte once again responded affirmatively. The government summarized the essential terms of the second plea agreement, including the denaturalization provision stating that Almonte "may be denaturalized as a consequence of pleading guilty to the crime." Almonte affirmed that the government's summary was consistent with her understanding of the plea agreement. She also confirmed that her attorney Grey had explained and discussed the plea agreement with her. Grey then assured the district court that he had discussed the plea agreement with Almonte

3

"several times" and that she fully understood it. The district court accepted Almonte's guilty plea, and later sentenced her to two years' imprisonment followed by one year of supervised release.

After she served her sentence, the government brought denaturalization proceedings against Almonte. The government alleged that Almonte had lacked the good moral character required for her 2012 naturalization because of her prior criminal conduct starting in 2008. The government further alleged that Almonte had lied in her naturalization application by stating that she had never committed any crimes for which she had not been arrested.

About eight months after these denaturalization proceedings began, Almonte filed a petition for a writ of error coram nobis seeking to vacate her conviction. Included with the petition was an affidavit from Grey about his representation of Almonte in 2012. He averred that "Ms. Almonte's plea and conviction were predicated on her belief that denaturalization was not a likely possibility." Grey recounted the following exchange with Almonte during the second change of plea hearing:

> During the Government's announcement of the essential terms of Ms. Almonte's plea, I inquired as to whether Ms. Almonte understood everything that was being said. The AUSA, Cristina Moreno, then mentioned Paragraph 12 of Ms. Almonte's Plea Agreement which discussed that Ms. Almonte "may be de-naturalized as a consequence of pleading guilty to the crime."

4

Ms. Almonte then asked me: "Can they really do that? Can they really take away my citizenship?"

I briefly replied to Ms. Almonte that it was possible, but that in my 25 years, I had never seen it happen.

The district court denied Almonte's coram nobis petition. Almonte timely appealed.

## II. STANDARD OF REVIEW

"We review the denial of a writ of error coram nobis for abuse of discretion." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (italics omitted) (quoting *United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002)). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Sowers v. R.J. Reynolds Tobacco Co.*, __ F.3d __ (11th Cir. 2020) (cleaned up) (quoting *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014)).

## III. DISCUSSION

"A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255." *Peter*, 310 F.3d at 712. "The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *United States v.*

5

*Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000) (citation omitted). "[T]he writ may issue only when the error involves a matter of fact of the most fundamental character . . . which renders the proceeding itself irregular and invalid," *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (internal quotation marks and citation omitted), and "the petitioner presents sound reasons for failing to seek relief earlier," *Mills*, 221 F.3d at 1204 (citation omitted).

Almonte argues that her conviction involved errors of the most fundamental character because her counsel and the district court misled her about the collateral immigration consequences of her guilty plea in violation of the Sixth Amendment right to effective assistance of counsel and the Fifth Amendment right to due process. She also argues that she reasonably waited to raise the issue because it became relevant only after the government filed denaturalization proceedings.

We conclude that Almonte's conviction did not involve an error of fundamental character. This is so for two reasons.

First, Almonte's counsel was not ineffective in advising her about the collateral consequences of her guilty plea. In the context of immigration, we have held that "the Sixth Amendment right to effective assistance of counsel requires counsel to inform a client whether her plea carries a risk of deportation," but, "when the law is not succinct and straightforward, a criminal defense attorney need do no more than advise a [defendant] that pending criminal charges may carry a risk of

6

adverse immigration consequences." *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020) (cleaned up). Here, Grey could not have predicted with confidence Almonte's denaturalization and deportation because denaturalization proceedings involve the discretion of a third party, namely the United States Citizenship and Immigration Services. Although Grey had never seen a denaturalization in his many years of experience, he nonetheless advised Almonte that "it was possible." He also discussed the plea agreement with her, including the provision expressly warning about the risk of denaturalization. His representation did not fall below the Sixth Amendment standard.

Second, the district court did not mislead Almonte. In both change of plea hearings, the government expressly noted that Almonte is a naturalized citizen who would be subject to denaturalization after her guilty plea. And in both cases, the district court admonished Almonte about this potential consequence, either by describing it to her directly or by asking whether it was consistent with her understanding of the plea agreement. Almonte's argument that the district court misled her is therefore meritless.

Because Almonte has failed to establish that her conviction involved an error of the most fundamental character, we need not assess whether she had good reasons for her failure to raise the alleged error earlier.

7

## IV. CONCLUSION

We **AFFIRM** the district court's denial of Almonte's petition for writ of error coram nobis.